UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

HUMA AYYAZ,

        Plaintiff,

   -v-                                                     No.  19-CV-01412-LTS-SN

THE CITY OF NEW YORK, ANDREW
THALER, and ROHIT SINGH,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Huma Ayyaz ("Ms. Ayyaz" or "Plaintiff") brings this action against The City of New York (the "City"), Andrew Thaler ("Mr. Thaler"), and Rohit Singh ("Mr. Singh") (collectively, the "Defendants").  In her Amended Complaint (docket entry no. 9, (the "AC")), Plaintiff asserts claims of discrimination based on her sex and race against each of the Defendants under Section 1983 of the Civil Rights Act of 1871,[1] 42 U.S.C. § 1983 ("Section 1983"); the New York State Human Right Law, N.Y. Exec law §§ 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, New York Administrative Code §§ 8-107 et seq. (the "NYCHRL").  Plaintiff also alleges that the City is liable for discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").

        The Court has jurisdiction of Plaintiff's claims under Section 1983 and Title VII pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state and local law

---

[1]    Plaintiff's AC states that the first three claims of relief are against Defendants under "Section 1983 of the Civil Rights Act of 1964."  However, the Court assumes this was a typographical error because 42 U.S.C. § 1983 was enacted in connection with the Civil Rights Act of 1871, not the Civil Rights Act of 1964.

claims pursuant to 28 U.S.C. §1367.

Defendants move to dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1-2) and (5-6).  (See docket entry no. 21.)  The Court has considered the submissions of the parties carefully and, for the reasons discussed below, Defendants' motion is granted in part and denied in part.

BACKGROUND

The following recitation of relevant facts is drawn from the AC, the well-pleaded factual content of which is taken as true for purposes of this motion practice, and from documents relied upon by or incorporated into the AC.

Plaintiff Huma Ayyaz is a Pakistani female.  (AC ¶ 15.)  In December 2013, Ms. Ayyaz became an Auxiliary Police Officer for the New York City Police Department ("NYPD") at its 105th Precinct.  (AC ¶ 16.)  NYPD auxiliary police officers are volunteer officers responsible for observing and reporting conditions that require the services of regular police officers.[2]

In 2015, Defendants, Police Officer Andrew Thaler and Auxiliary Police Sergeant Rohit Singh, began supervising Ms. Ayyaz as an auxiliary officer for Defendant City of New

---

[2] Federal Rule of Evidence 201 authorizes a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned . . . at any stage in the proceeding," including on a motion to dismiss.  See, e.g., Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991) ("Of course," a district court "may . . . consider matters of which judicial notice may be taken under Fed. R. Evid. 201" on a motion to dismiss.).  Accordingly, the Court takes judicial notice of the responsibilities of NYPD auxiliary police officers, as articulated in People v. Rosario, 78 N.Y.2d 583, 587 (1991), and published on the NYPD Website, available at https://www1.nyc.gov/site/nypd/careers/human-resources-info/auxiliary-police.page. (last visited March 29, 2021).

York.  (AC ¶ 17.)  As the Auxiliary Police coordinator at the 105th Precinct, Mr. Thaler was directly responsible for coordinating Ms. Ayyaz's schedule.  (AC ¶ 17).  Mr. Singh, the 105th Precinct's Auxiliary Sergeant, was responsible for training and directing the precinct's auxiliary officers, including Ms. Ayyaz.  (AC ¶ 17.)

On multiple occasions between June and September 2017, Ms. Ayyaz rejected requests from Mr. Thaler to "come to his home" because his wife was away.  (AC ¶ 18.)  On the evening of August 22, 2017, Mr. Thaler sent Ms. Ayyaz a text message asking for her location.  (AC ¶ 19.)  When Ms. Ayyaz responded that she was riding a bus home, Mr. Thaler inquired about her exact location and approximately what time Ms. Ayyaz would arrive at her stop.  (AC ¶ 19.)  Ms. Ayyaz provided Mr. Thaler, who was her supervisor, with the requested information.  (AC ¶ 19.)  When Ms. Ayyaz arrived at her bus stop in Queens Village, she saw both Messrs. Thaler and Singh in uniform; Mr. Thaler was armed.  (AC ¶ 20.)  Ms. Ayyaz told the Defendants she intended to go home, but Mr. Thaler insisted on giving her a ride home.  (AC ¶ 21.)  Ms. Ayyaz accepted the ride.  (AC ¶ 21.)  Ms. Ayyaz entered the back seat of the NYPD van that Mr. Singh was driving, while Mr. Thaler was sitting in the front passenger seat.  (AC ¶ 22.)

Once he began driving, Mr. Singh disregarded the directions that Ms. Ayyaz gave him by making a wrong turn.  (AC ¶ 23.)  Mr. Singh drove and parked the van in an unlit, narrow alley way.  (AC ¶ 24.)  Mr. Thaler then exited the passenger seat and entered the back seat of the van, next to Ms. Ayyaz.  (AC ¶ 26.)  Mr. Thaler grabbed Ms. Ayyaz's hand, rubbed her arm, and commented that her skin was "very smooth and nice."  (AC ¶ 26.)  Ms. Ayyaz interpreted Mr. Thaler's advances as indicating a desire to engage in sexual intercourse with her.  (AC ¶ 26.)  Just before locking and turning off the car, including its lights, Mr. Singh asked Mr. Thaler if he wanted to "do it" inside or outside the van.  (AC ¶ 27.)  Ms. Ayyaz then removed Mr. Thaler's

hand from her arm, and Mr. Thaler returned to the front passenger seat, telling Mr. Singh to drive Ms. Ayyaz home because she was "not in the mood today." (AC ¶ 28.)

In the weeks following, Ms. Ayyaz disclosed the August 22 incident to Auxiliary Sergeant Om Verma. (AC ¶ 32.) Despite Sargeant Verma's assurance that "the NYPD has no tolerance" for such behavior, Ms. Ayyaz alleges that Defendant City failed to adequately respond to the incident. (AC ¶ 32.) On November 6, 2017, a physician diagnosed Ms. Ayyaz with post-traumatic stress resulting from the incident. (AC ¶ 33.) Subsequently, on December 19, 2017, Defendant City granted Ms. Ayyaz a medical leave of absence, which was extended for another six months in November 2018. (AC ¶¶ 35-36.) Ms. Ayyaz commenced the instant action on February 14, 2019. (See docket entry no. 1.)

The Court ordered Plaintiff to file proof of service on Defendants Thaler and Singh by July 26, 2019. (See docket entry no. 11.) Upon Plaintiff's failure to file proof of service for Defendant Singh by July 26, the Court ordered Plaintiff to file such proof of by August 5, 2019. (See docket entry no. 18.) On August 6, 2019, Plaintiff filed proof of service on Defendant Singh. (See Affidavit of Service, docket entry no. 19.) The Affidavit of Service asserts that service was delivered to Defendant Singh's co-worker at Defendant Singh's actual place of business, and that the recipient had advised the process server that Defendant Singh "[had] not been [there] in over 2 years." (Id.)

## DISCUSSION

Plaintiff alleges that Defendants discriminated against her on the basis of her sex and race. She alleges that Defendants Singh and Thaler, Defendant City's agents, sexually harassed her because she is a member of a conservative Pakistani family, which they believed would prevent Plaintiff from revealing Defendants' misconduct. Pursuant to FRCP 12(b)(1), and

12(b)(6), Defendants move to dismiss Plaintiff's discrimination claims under Section 1983 against Defendant City for failure to state a plausible Monell claim for municipal liability, and against Defendants Thaler and Singh under the doctrine of qualified immunity.  Defendants also move to dismiss Plaintiff's discrimination claims under Title VII, the NYSHRL, and the NYCHRL, arguing that Plaintiff is not an "employee" as the term is defined under the relevant laws.  Finally, pursuant to FRCP 12(b)(2) and 12(b)(5), Defendants move to dismiss all claims against Defendant Singh for lack of personal jurisdiction due to improper service of process.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  It is not sufficient for a complaint to simply recite legal conclusions or elements of a cause of action. Id.  When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations within the complaint and draws all reasonable inferences in favor of the plaintiff. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  The court may also consider matters of which it takes judicial notice on a motion to dismiss.  See Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 426 (2d Cir. 2008) (holding the District Court did not err when it considered "matters outside the pleadings" without converting the motion to dismiss to a summary judgment motion because matters judicially noticed are not considered outside the pleadings).

Under Rule 12(b)(1), a district court may dismiss a complaint for lack of subject matter jurisdiction when the court "lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (vacated on other grounds) (internal citations

and quotation marks omitted); see also FRCP 12(h)(3) (providing that Court must dismiss an action if it determines it lacks subject matter jurisdiction). "The plaintiff bears the burden of establishing jurisdiction in a Rule 12(b)(1) motion . . . by a preponderance of the evidence." Samet v. Rodriguez, No. 1:16-CV-7072-GHW, 2018 WL 1274752, at *1 (S.D.N.Y. Mar. 8, 2018).

Section 1983 Claim against Defendant City
(First Cause of Action)

Defendants argue that Plaintiff's Section 1983 claim against the City must be dismissed because Plaintiff failed to establish a claim for municipal liability. Under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), to establish municipal liability, a plaintiff must demonstrate that she suffered constitutional harm as a result of a municipal policy or custom. Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) (citing Monell, 436 U.S. at 694). "The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation." Id. A discriminatory practice that is so persistent and widespread such that it is considered permanent and well settled may constitute a "custom or policy" that generates municipal liability. Id.

Plaintiff does not allege a pattern of discrimination in the AC, nor does she proffer facts indicative of a persistent and widespread practice of sexual harassment or sex or racial discrimination; rather, she recounts incidents that she personally experienced. To support her argument that sexual harassment and discrimination are pervasive in the NYPD, Plaintiff relies on publicly available internet sources and cites Wise v. New York City Police Dep't, 928 F. Supp. 355, 365 (S.D.N.Y. 1996) (denying defendant's summary judgment motion where a genuine issue of material fact existed regarding whether sexual harassment in the NYPD was

widespread, where plaintiff provided detailed allegations of multiple incidents of sexual harassment that both she and other women experienced). Here, Plaintiff fails to allege that she had knowledge of, or was the victim of, sexual harassment or discrimination incidents other than the alleged incidents involving herself and Defendants Singh and Thaler. Plaintiff has failed to state a cause of action against Defendant City under Monell because she has not alleged facts tying the actions of which she complains to a City custom, policy, or practice so pervasive as to have become a custom or policy.

Plaintiff also cites an alternative test for municipal liability in the Second Circuit, which is employed when the allegations of liability are based on inadequate training or the failure to supervise. See Walker v. New York, 974 F.2d 293, 297 (2d Cir. 1992). Inadequate training may constitute an official policy or custom only if the failure to train amounts to a deliberate indifference to the rights of individuals with whom employees will interact. Id. (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). However, Plaintiff fails to support her argument on the basis of this test with facts alleged in the AC; she has not pleaded facts plausibly indicating that situations such as those she alleges she experienced are ones that policy makers know to a "moral certainty" that employees will confront, that there is a history of misconduct in such situations or that training or supervision will make such situations less difficult, and that mishandling of such situations will frequently cause the deprivation of a citizen's rights. Therefore, the Court finds that Plaintiff has failed to allege a plausible Monell claim under Section 1983 against Defendant City under either iteration of the test.

Section 1983 Claims against Defendants Thaler and Singh
(Second and Third Causes of Action)

Defendants argue that Plaintiff's Section 1983 claims against Defendants Thaler

and Singh must be dismissed on the basis of qualified immunity because it is not clearly established in the Second Circuit that Plaintiff had a constitutional right to be free from race and sex discrimination, including sexual harassment, outside of the employment context.  Section 1983 provides, in relevant part:

> "Every person who, under color [of law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C.A. § 1983 (WestLaw through P.L. 116-259).  The Supreme Court has explained that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The doctrine protects government officials from liability for civil damages insofar as "(1) [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for [them] to believe that [their] actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (citations omitted).

In determining whether the first prong of the test has been satisfied, the court must first examine whether the facts alleged "make out a violation of a constitutional right" and, then, consider whether the "right at issue was 'clearly established'" at the time of the alleged misconduct.  Pearson, 555 U.S. at 232 (citations omitted).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Anderson v. Recore, 317 F.3d 194, 197

(2d Cir. 2003) (internal quotations and citations omitted).  A party may raise qualified immunity as a defense in a motion to dismiss pursuant to FRCP 12(b)(6) "as long as the defense is based on facts appearing on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

Although Defendants concede that Plaintiff had a clearly established right to be free from sexual harassment and discrimination in the workplace context to the extent she had an employment relationship with the NYPD, they argue that they are entitled to qualified immunity because an auxiliary police officer's employment status is an unresolved question of law, and was not clearly established at the time of the alleged misconduct.  Defendants' argument is misplaced.

Plaintiff alleges that she was subjected to discrimination and sexual harassment on the basis of her sex and race by persons acting under the color of state law.  Plaintiff's Section 1983 claim does not root itself in the Title VII employment context, and instead is grounded in the Equal Protection Clause of the Fourteenth Amendment.  While proof of a Title VII violation may be sufficient to prove an Equal Protection Clause violation, it is not necessary to establish an Equal Protection Clause violation.  See Shanes-Hernandez v. Clementoni, 99 F.3d 402 (2d Cir. 1995) ("The elements of an equal protection sexual harassment claim are not coextensive with the elements of a Title VII sexual harassment claim.").  Moreover, such a finding would be antithetical to the Supreme Court's stated interest in holding public officials accountable for exercising power irresponsibly.  As the Plaintiff argues, Defendants' interpretation of Section 1983 would allow public officials to discriminate or harass, with impunity, any individual who does not clearly fall under the definition of an "employee." Therefore, the question of Plaintiff's employment status is irrelevant to the determination of

whether Defendants are entitled to qualified immunity.

The Supreme Court has established that "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." Loving v. Virginia, 388 U.S. 1, 10 (1967) (citations omitted).  The Court finds that Plaintiff had the clearly established constitutional right to be free from sexual harassment, and race and sex discrimination, by a state actor, and that no reasonable person would believe the alleged actions of Defendants Thaler and Singh towards Plaintiff were lawful on the night of August 22, 2017.  Therefore, Defendants' motion to dismiss on the basis of qualified immunity is denied with respect to Plaintiff's Section 1983 claims against Defendants Thaler and Singh.

Title VII, NYSHRL, and NYCHRL Claims

Defendants argue that Plaintiff's employment discrimination claims against Defendant City under Title VII, and against all Defendants under NYSHRL and NYCHRL, must be dismissed because an auxiliary police officer is not an "employee" entitled to the protections afforded under these laws.

### Title VII Claim Against Defendant City
### (Fourth Cause of Action)

Title VII of the Civil Rights Act of 1964 defines an employee as an "individual employed by an employer."  42 U.S.C.A. § 2000e(f) (Westlaw through P.L. 116-259).  The Supreme Court has held that, when Congress fails to define the term "employee" with precision, courts may infer that "'Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992) (quoting Community for Creative Non-Violence v.

Reid, 490 U.S. 730, 739–40 (1989)).  The Second Circuit applies a two-part test in determining whether an individual meets Title VII's "circular definition" of 'employee.'  See United States v. City of New York, 359 F.3d 83, 91 (2d Cir. 2004).

First, as a threshold matter, "the plaintiff must show she was hired by the putative employer" by establishing that she received remuneration for the work she performed.  Id. at 91-92; see also York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 126 (2d Cir. 2002) ("[T]he question of whether someone is or is not an employee under Title VII usually turns on whether he or she has received direct or indirect remuneration from the alleged employer") (internal quotations omitted).  Where the purported employee receives no financial benefit from the employer, no plausible employment relationship exists because compensation is an essential condition to such relationship.  O'Connor v. Davis, 126 F.3d 112, at 115–16 (2d Cir. 1997) (internal citation omitted).  The requisite remuneration may include employee benefits such as health insurance, vacation, sick pay, retirement pension, or other insurance or benefits.  York, 286 F.3d at 126 (citing O'Connor¸ 126 F.3d at 116; Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468, 471 (2d Cir. 1999)).  However, absent the more traditional forms of compensation, a plaintiff's purported benefits must meet a minimum level of substantiality in that the benefits are not merely incidental to the activity performed.  Id.  For example, benefits such as clerical support, limited tax deductions, and networking opportunities do not qualify because, unlike traditional benefits, they do not "primarily benefit the employee independently of the employer."  Id.  Once the plaintiff establishes that she was hired, the court then considers a number of additional factors articulated by the Supreme Court to determine whether an employment relationship exists.  See O'Connor, 126 F.3d at 115.

Defendants principally argue that Plaintiff has failed to demonstrate that she

received the requisite remuneration from the NYPD for her work as an auxiliary police officer. Plaintiff counters that, although auxiliary officers are unpaid volunteers, she received three benefits that satisfy the remuneration requirement: (1) eligibility for death benefits; (2) eligibility to become a member of the Auxiliary Police Benevolent Association of the City of New York (the "APBA"); and (3) a medical leave of absence.

First, Plaintiff argues that auxiliary officers' eligibility for death benefits when killed in the line of duty is not an "incidental" benefit under York. To support her argument, Plaintiff merely cites a 2008 New York Daily News article that discusses a ruling by the U.S. Attorney General declaring that the families of two auxiliary officers killed in the line of duty were entitled to death benefits from the federal Department of Justice ("DOJ"). Such a proffer is insufficient to demonstrate that she received remuneration as an employee because, according to the article Plaintiff cites, the benefit is provided by the federal DOJ, not by the NYPD. See O'Connor, 126 F.3d at 116 n. 2 (rejecting plaintiff's argument that the federal work study pay she received for the hours she interned at a hospital constituted substantial employee benefits because the work study funding was provided by her school rather than by the hospital, her purported employer).[3]

Similarly, Plaintiff contends that her APBA membership eligibility satisfies the

---

[3]   Plaintiff fails to plead her alleged eligibility for death benefits in her AC and raises it for the first time in her opposition papers. For this reason, the Court need not address this contention at all for it would constitute "improper[ ] reli[ance] on matters outside the pleading[s]." Friedl v. City of New York, 210 F.3d 79, 83–84 (2d Cir.2000) (internal quotations omitted); see also Universal Trading & Inv. Co. v. Tymoshenko, No. 11–CV–7877, 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012) (declining to consider certain factual assertions because "new facts and allegations, first raised in a [p]laintiff's opposition papers, may not be considered in deciding a motion to dismiss.") (alterations and internal quotation marks omitted). Nevertheless, because the proffer is factually insufficient, the Court addresses this point in the interest of judicial economy.

remuneration requirement because the APBA provides its members with substantial benefits, such as line of duty funeral service, scholarships, educational benefits, and various healthcare related benefits.  Plaintiff has proffered no facts indicating that such benefits are conferred by the NYPD, and therefore fails to satisfy the remuneration requirement on the basis of her APBA membership eligibility.  See O'Connor, 126 F.3d at 116 n.1.[4]

Finally, Plaintiff argues that the medical leave of absence she received from the NYPD as an auxiliary police officer qualifies as a substantial benefit traditionally reserved for those in an employment relationship.  However, as Defendants point out, Plaintiff does not allege that she was paid during the course of her medical leave of absence.  A medical leave of absence that does not confer any financial benefits is not akin to recognized substantial benefits, such as vacation time or sick pay.  Accordingly, the Court finds that neither Plaintiff's option to take a medical leave of absence, nor her other alleged benefits, constitute remuneration sufficient to establish Plaintiff's status as an "employee" entitled to the protections afforded under Title VII.  See York, 286 F.3d at 126.  As a result, the Court need not address the additional factors articulated by the Supreme Court in O'Connor to determine Plaintiff's status as an employee.

For these reasons, the Court finds that Plaintiff fails to state a claim upon which relief may be granted under Title VII. [5]

---

[4] Like her proffer regarding her alleged eligibility for death benefits, Plaintiff's proffer regarding her APBA membership benefits is also absent from her Complaint.  For this reason, the Court need not consider this information, but nevertheless has done so in the interest of judicial economy.  See Friedl v. City of New York, 210 F.3d 79, 83–84 (2d Cir.2000).

[5] Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to Title VII and the SHRL because Plaintiff failed to plead that she qualified as an "employee" entitled to protection under Title VII or the SHRL. While Defendants have demonstrated that Plaintiff failed to state a claim on the merits with respect to her status as an employee, the Defendants' motion is denied to the extent it rests on the contention that the Court lacks subject matter

### NYSHRL and NYCHRL Claims Against All Defendants
### (Fifth through Tenth Causes of Action)

Defendants contend that Plaintiff's claims under the NYSHRL and NYCHRL should also be dismissed because Plaintiff does not meet the definition of an "employee" under those laws. The Court agrees. The NYSHRL does not specifically define who constitutes an employee. See N.Y. EXEC. LAW § 292. However, "the standards for recovery under [the NYSHRL] . . . are the same as the federal standards under [T]itle VII[.]" Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n.3 (2004); see also Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996) (considering plaintiff's "state law claims in tandem with [the] Title VII claims because New York courts rely on federal law when determining claims under the New York Human Rights Law."). Plaintiff also concedes that the analysis used to examine Title VII claims applies to NYSHRL claims.

Section 8-107(1)(a) of the NYCHRL provides that it is an unlawful discriminatory practice for an "employer" to discriminate against "any person . . . in compensation or in terms, conditions or privileges of employment." N.Y. Admin Code § 8-107(1)(a) (2020). Courts have routinely found that the threshold remuneration condition that is essential for an individual to qualify as an "employee" under Title VII and the NYSHRL also applies to NYCHRL claims. See Wang v. Phoenix Satellite TV US, Inc., 976 F. Supp. 2d 527, 536 (S.D.N.Y. 2013) (holding that the plain meaning of the NYCHRL, the case law, interpretations of Title VII and the NYSHRL, as well as legislative history confirm that unpaid

---

jurisdiction due to Plaintiff's failure to plead employee status. See Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006) (holding, in context of Title VII's definition of covered employer, that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

interns are not protected by the NYCHRL); Doe v. Anonymous Inc., No. 18 CV 10924 (PAC), 2019 U.S. Dist. Lexis 107886, at *6 (S.D.N.Y. June 25, 2019).

Therefore, for the same reasons discussed in connection with Plaintiff's claims under Title VII, Plaintiff's NYSHRL and NYCHRL claims are dismissed for failure to state a claim upon which relief may be granted.

All Claims Against Defendant Singh
(Second, Third, and Fifth through Tenth Causes of Action)

Defendants argue that all of Plaintiff's claims against Defendant Singh should be dismissed pursuant to FRCP 12(b)(2) for lack of personal jurisdiction, and FRCP 12(b)(5) for insufficient service of process.  Proper service of summons (or waiver thereof) is procedurally required in order for a federal court to exercise personal jurisdiction over a defendant.  See Omni Capital Intl. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); FRCP 4(d).  In order to effect proper service, a defendant may be served according to the laws of the State where the service is made.  See FRCP 4(e).  Under the laws of the State of New York, service may be made upon a natural person by delivering the summons directly to the defendant, or "to a person of suitable age and discretion at the [defendant's] actual place of business."  See N.Y. C.P.L.R. 308 (1-2).  "A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location."  Selmani v. City of New York, 954 N.Y.S.2d 580, 581–82 (App. Div. 2d Dep't 2012) (citations omitted).  "[W]hether service has been made at one's 'actual place of business' is a fact-and circumstance-specific inquiry" and requires reasonable reliance on the recipient to redeliver service upon the intended defendant.  Leung v. New York Univ., No. 08-CV-05150 (GBD), 2016 WL 1084141, at *6 (S.D.N.Y. Mar. 17, 2016) (finding that service upon an

individual in a building across the street from defendants' actual place of business was proper where plaintiffs could have reasonably relied on the recipient to redeliver service upon the defendants because they were employed by the same employer and the defendants worked in close proximity to the location where service was made).

Defendants contend that Plaintiff failed to properly serve Defendant Singh because the New York Medical Training Center was not Mr. Singh's "actual place of business." The recipient of service at the New York Medical Training Center facility told the process server that Mr. Singh had not been at the location for over two years. Based on this statement, and absent evidence proving otherwise, it is clear that Mr. Singh was neither physically present nor transacting business at the location with regularity. Therefore, a reasonable person could not have relied the recipient to redeliver the service to Mr. Singh.

Plaintiff argues that she fulfilled her service obligations because she performed her due diligence in attempting to locate Mr. Singh's actual place of business. Plaintiff claims she researched Mr. Singh's personal profiles on LinkedIn and Twitter, and checked the New York Medical Training Center website, all of which indicated Mr. Singh was employed at the New York Medical Training Center. (See Pl.'s Mem. of Law, Exh. A, docket entry no. 26.) To support her argument, Plaintiff relies on two cases that she contends stand for the proposition that service upon an individual at a particular location is proper where all available information indicates the location as the defendant's actual place of business. See Velez v. Vassallo, 203 F. Supp. 2d 312, 324 (S.D.N.Y. 2002); Sartor v. Utica Taxi Ctr., Inc., 260 F. Supp. 2d 670, 678 (S.D.N.Y. 2003).

Plaintiff's argument regarding her due diligence is misplaced, and her interpretation of the cases she relies on is misleading. First, a plaintiff's due diligence is relevant

with regard to the inquiry of whether plaintiff is permitted to use the "affix and mail" method of service under CPLR 308(4).  In order to resort to the "affix and mail" method, a plaintiff must have used her best efforts, or due diligence, in serving the defendant according to the methods prescribed under CPLR 308(1) or (2).  See CPLR 308(4).  Therefore, the necessary "due diligence" with respect to effecting service is irrelevant to the efforts Plaintiff employed to locate the defendant's actual place of business.  Furthermore, in the cases relied on by Plaintiff, the court found that service was proper on the basis of the well-settled notion that a defendant may have more than one "actual place of business," and there was sufficient evidence that the defendants owned or regularly transacted business at the locations where service was delivered.  See Velez, 203 F. Supp. 2d at 324 (service of process on individual parking garage owner was proper where defendant denied that his garage was his "actual place of business" but plaintiffs "proffered substantial documentation establishing that [defendant] holds out [the garage] as his place of business, or, at the very least, as his business mailing address"); Sartor, 260 F. Supp. 2d at 678 (service on taxi owner by leaving copy of summons and complaint with dispatcher at garage where taxi was registered was proper, despite owner's contentions that garage was not his actual place of business, where "[t]he record contains substantial evidence establishing that [the taxi owner] held out [the garage] as his actual place of business for the purpose of correspondence and other activities related to his taxi operations" and actually used the address for communications).  Plaintiff's reliance on Velez and Sartor is unavailing here, where Plaintiff's reliance on the address is based on social media postings of unspecified vintage and the appearance of the defendant on the business's website, but the person who accepted the service at the address stated that the Defendant had not been present on the premises in two years.

For these reasons, Plaintiff's claims against Defendant Singh are dismissed without prejudice for lack of personal jurisdiction and improper service of process. N.Y. C.P.L.R. 306-b ("If service is not made upon a defendant within the time provided in this section, the court . . . shall dismiss the action without prejudice as to that defendant, or upon good cause shown or in the interest of justice, extend the time for service.").

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff Huma Ayyaz's Amended Complaint is granted in part and denied in part as follows:

1. First Cause of Action: The Court grants Defendants' motion pursuant to FRCP 12(b)(6) as to Plaintiff's Section 1983 claim against Defendant City;

2. Second and Third Causes of Action: The Court denies Defendants' motion as to Plaintiff's Section 1983 claims against Defendants Thaler and Singh on the basis of qualified immunity;

3. Fourth Through Tenth Causes of Action: The Court grants Defendants' motion pursuant to FRCP 12(b)(6) to dismiss Plaintiff's Title VII, NYSHRL, and NYCHRL claims as against all Defendants;

4. The Court grants Defendants' motion pursuant to FRCP 12(b)(2) and 12(b)(5) to dismiss all claims against Defendant Singh. Plaintiff's claims against Defendant Singh are dismissed without prejudice.

The only claim that survives Defendants' motion to dismiss is Plaintiff's Section 1983 claim against Defendant Thaler. This action remains referred to Magistrate Judge Netburn for general pretrial management.

This Memorandum Opinion and Order resolves docket entry no. 21.

SO ORDERED.

Dated: New York, New York
March 31, 2021

     /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge